UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| AJAY AND TANUJA PRADHAN, individuals, | ) | Case No.: 10-CV-03245-LHK |
| MAYA BALI, an individual, on behalf of | ) | |
| themselves and others similarly situated, | ) | ORDER GRANTING DEFENDANTS' |
| | ) | MOTION TO DISMISS |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITIBANK, N.A., a national corporation, | ) | |
| CITIMORTGAGE, INC., a national corporation, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Defendants Citibank, N.A. and CitiMortgage, Inc. move to dismiss Plaintiffs Ajay Pradhan, Tanuja Pradhan, and Maya Bali's First Amended Class Action Complaint (Dkt. No. 11, "FAC").[1] *See* Dkt. No. 27 ("Mot."). Plaintiffs failed to file either an opposition brief or a statement of non-opposition in violation of Civil Local Rule 7-3.[2] Pursuant to Civil Local Rule 7-1(b), the Court deems this motion suitable for decision without oral argument. After considering Defendants' arguments and the relevant authorities, this Court hereby GRANTS Defendants' motion to dismiss Plaintiffs' FAC and VACATES both the motion hearing set for January 13, 2011 on this matter and the Case Management Conference set to follow the motion hearing.

///

---

[1] Plaintiffs originally filed their complaint on July 23, 2010. Dkt. No. 1. Pursuant to a joint stipulation between Plaintiffs and Defendants, Plaintiffs filed their FAC on October 5, 2010.
[2] Defendants also brought Plaintiffs' lack of opposition to the Court's attention. *See* Dkt. No. 33.

United States District Court
For the Northern District of California

# I. BACKGROUND

Plaintiffs allege that Defendants engaged in a predatory lending scheme.  FAC ¶¶ 47-52.[3] According to Plaintiffs, Defendants, through deceptive and fraudulent practices, sought to maximize their profits by selling risky and costly loans to homeowners without informing those homeowners of the terms and risks of those loans.  *Id.* ¶¶ 47-62.  Plaintiffs allege that these risky loan products include, among other examples, subprime mortgages, adjustable rate mortgages, piggy-backed home equity lines of credit, prepayment penalties, and interest-only loans.  *Id.* ¶ 28. In addition, Plaintiffs claim that Defendants used deceptive marketing and high-pressure sales techniques to push these loan products on consumers despite numerous complaints by borrowers that they did not understand their loan terms.  *Id.* ¶¶ 47-50.  Plaintiffs claim that Defendants deceptively sold these products because of the profits available from the sale of these loans on the secondary market.  *Id.* ¶¶ 51-62.  In addition to these general allegations, Plaintiffs make specific allegations regarding their involvement with Defendants.

Ajay and Tanuja Pradhan

Ajay and Tanuja Pradhan originally purchased their home, financed with a mortgage from Defendants, in 2007.  *Id.* ¶ 30.  The mortgage required interest-only payments and had a fixed interest rate for one year, after which the interest rate became adjustable.  *Id.*  When the fixed rate was set to expire, the Pradhans looked to refinance.  *Id.* ¶ 31.   They first approached a private credit union and paid for initial appraisals and broker fees in order to obtain a better mortgage.  *Id.*

Defendants then phoned the Pradhans and informed the couple that Defendants could offer them a fixed rate mortgage at a lower payment.  *Id.* ¶ 32.  Following the advice of Defendants' loan officer, the Pradhans abandoned their credit union loan application.  *Id.*  After further review, however, Defendants found that the Pradhans did not qualify for a refinance because their property value had not increased.  *Id.* ¶ 33.  At the time of this finding, the Pradhans' loan rate had already increased, adjusting to the prevailing high market rates.  *Id.*

Defendants subsequently sold the Pradhans two loan products.  *Id.* ¶ 34.  The first was a five-year fixed then adjustable rate mortgage with interest-only payments for the first five years.

---

[3] Plaintiffs' FAC contains multiple paragraphs bearing the numbers 50, 51, and 52.

United States District Court
For the Northern District of California

*Id.* The second was a home equity line of credit ("HELOC") with a forced cash-out at closing. *Id.* Since obtaining these loans, the Pradhans have been unable to refinance again. *Id.* ¶ 37. Moreover, by purchasing the HELOC loan, the Pradhans lost the $200,000 worth of equity they had in their home. *Id.* According to the Pradhans, they are now facing the reality of short selling or losing their home. *Id.*

Maya Bali

Maya Bali purchased a home with her now deceased husband in 2007. *Id.* ¶ 38. In 2008, after Bali decided to refinance her home loan, Defendants contacted her by phone. *Id.* Defendants informed Bali that she could obtain a lower interest rate and lower monthly payments by refinancing with Defendants. *Id.* After beginning the loan application, Bali's husband passed away. *Id.* ¶¶ 39-40. Bali filled out a new loan application for a one-year fixed then adjustable rate mortgage with interest-only payments for five years. *Id.* ¶ 41.

According to Bali, the loan officer inflated her income in order to ensure that she still qualified for the loan. *Id.* ¶ 42. Bali claims that her 2006 tax returns show an annual income of $31,317.96 or a monthly income of $2,609.83. *Id.* ¶ 42. On her loan application, however, Bali alleges that the loan officer inflated her income to show that she earned $6,500 a month as a cashier at Burger King. *Id.* ¶ 42.

Bali claims that at no time before submission did Defendants provide her copies of the loan origination agreement or required upfront disclosures. *Id.* ¶ 44. In addition, Bali alleges that Defendants did not provide her full disclosure of her predictable monthly mortgage payments or the total amount the financing for her home would cost. *Id.* ¶ 45. Bali claims that her monthly mortgage payments, plus tax and insurance, totaled $2,891.29, two hundred dollars more than her monthly income. *Id.* ¶ 44. Bali alleges that as a result of Defendants' actions, she is in imminent danger of losing her home. *Id.* ¶ 46.

Based on these and other allegations contained in the FAC, Plaintiffs claim that Defendants violated several federal and state statutes, including: (1) 18 U.S.C. §§ 1961-1968 (Racketeer Influenced and Corrupt Organizations Act ("RICO")); (2) 15 U.S.C. § 1601, *et seq.* (Truth in Lending Act ("TILA")); (3) California Business and Professions Code § 17500; and (4) California

1    Business and Professions Code § 17200.  Plaintiffs also claim that Defendants' actions constitute a

2    breach of the implied covenant of good faith and fair dealing.

3         Defendants move this Court pursuant to Federal Rules of Civil Procedure 12(b)(1),

4    12(b)(6), and 9(b) to dismiss Plaintiffs' complaint in its entirety.  Mot. 1.  In addition, Defendants

5    request this Court to take judicial notice of four exhibits filed in connection with their motion to

6    dismiss.  *See* Dkt. No. 28 ("RJN").

7                                    **II.  LEGAL STANDARD**

8         A defendant can move to dismiss a complaint under Rule 12(b)(1) for lack of standing.  *See*

9    *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010) ("Because

10   standing and ripeness pertain to federal courts' subject matter jurisdiction, they are properly raised

11   in a Rule 12(b)(1) motion to dismiss.") (citations omitted).  "On a motion to dismiss for lack of

12   standing, a district court must accept as true all material allegations in the complaint, and must

13   construe the complaint in the nonmovant's favor."  *Id.* at 1121 (citing *Bernhardt v. County of Los*

14   *Angeles*, 279 F.3d 862, 867 (9th Cir. 2002)).

15        A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint.  *See*

16   *Ileto v. Glock Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003).  "To survive a motion to dismiss, a

17   complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

18   plausible on its face.'"  *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d

19   868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 127 S. Ct. 1955, 167 L. Ed.

20   2d 929 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that

21   allows the court to draw the reasonable inference that the defendant is liable for the misconduct

22   alleged."  *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010)

23   (quoting *Iqbal*, 129 S. Ct. at 1949) (internal quotation marks omitted).  When the facts alleged do

24   not nudge a plaintiff's claim "across the line from conceivable to plausible," the court should

25   dismiss the complaint.  *See Twombly*, 550 U.S. at 570, 127 S. Ct. 1955.  "Determining whether a

26   complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing

27   court to draw on its judicial experience and common sense."  *Iqbal*, 129 S. Ct. at 1950 (citation

28   omitted).

*United States District Court*
For the Northern District of California

4

Case No.: 10-CV-03245-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

Even if Plaintiff's FAC fails to state a claim on which relief can be granted, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (citations and quotations omitted); *see also Balistreri v. Pacifica Police Dept.*, 901 F.2d 696,701 (9th Cir. 1990).

### III. ANALYSIS

Defendants move to dismiss Plaintiffs' entire complaint under Rule 12(b)(1) and move to dismiss each of Plaintiffs' individual claims under Rule 12(b)(6).  In addition, Defendants argue that this Court should dismiss Plaintiffs' claim pursuant to Federal Rule of Civil Procedure 41(b).

#### A.  Rule 12(b)(1) Motion

Defendants first argue that because none of the Plaintiffs have constitutional standing to maintain this action against CitiMortgage or Citibank, this Court should dismiss Plaintiffs' FAC under Rule 12(b)(1).

The "irreducible constitutional minimum of standing contains three elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992).  These elements are: (1) "the plaintiff must have suffered an injury in fact" that is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; (2) "there must be a causal connection between the injury and the conduct complained of"; and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Id.* at 560-61, 112 S. Ct. 2130 (citations, quotations, and quotation marks omitted).  Plaintiffs have the burden of establishing these elements.  *Id.* at 561, 112 S. Ct. 2130 (citations omitted).  "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim."  *Id.*, 112 S. Ct. 2130 (citation, alterations, and quotation marks omitted).

Defendants claim that Plaintiffs have failed to allege enough facts to satisfy the first two elements. Mot. 5.  In arguing that Plaintiffs have failed to suffer an injury in fact, Defendants point out that the Pradhans have not alleged that they are in default on their loans, unable to make their

**United States District Court**
For the Northern District of California

1    loan payments, or facing foreclosure.  *Id.* at 7.  Defendants also claim that Bali does not allege that

2    she is in default on her loan or is facing foreclosure.  *Id.*

3        Even though Defendants correctly point out that Plaintiffs have yet to suffer every possible

4    injury that could result from Defendants' alleged conduct, Defendants' argument fails to appreciate

5    both the fully-materialized injuries that the Pradhans have allegedly suffered and the imminent

6    harm that Bali alleges she will soon suffer.  As alleged in the FAC, the Pradhans lost all the

7    accumulated equity in their home when they refinanced their home mortgage with Defendants.  In

8    addition, the Pradhans claim that after refinancing their home with Defendants, they must pay off

9    two loans—the adjustable rate mortgage and the HELOC—instead of the single mortgage payment

10   they originally had.  According to the FAC, this situation occurred after Defendants allegedly

11   convinced the Pradhans to abandon a pending loan application with a credit union and fraudulently

12   induced them into these expensive loans.  According to the facts contained in the FAC, Bali is in

13   imminent danger of losing her home as a result of the loan that Defendants allegedly sold her using

14   fraudulent means.  This danger is realistically imminent given that Bali's monthly loan payment is

15   two hundred dollars more than her monthly income.

16       These actual and imminent injuries are concrete and particular.  Simply because they may

17   yet become more serious does not make them hypothetical or conjectural in nature.  Thus, they are

18   properly considered injuries in fact.

19       Defendants also argue that Plaintiffs' complaint does not allege any injury traceable to

20   CitiMortgage or Citibank.  *Id.* at 5.  In their complaint, the Plaintiffs allege that the Defendants

21   engaged in several different practices that constitute predatory lending.  Defendants argue that

22   because Plaintiffs do not claim to have been affected by all of these practices, the Plaintiffs lack

23   standing to maintain this action.  *Id.* at 6.  Defendants further argue that the doctrine of standing

24   prohibits one party from asserting another party's rights and that a class representative cannot

25   litigate a claim against a defendant whom the representative could not sue individually.  *Id.*  In

26   support of their arguments, Defendants cite a pair of Ninth Circuit cases that discuss standing

27   issues arising at the class certification stage of litigation.  *Id.*

28

Case No.: 10-CV-03245-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

**United States District Court**
For the Northern District of California

1       Even assuming that Defendants correctly describe the law of standing as it pertains to class

2   certification, it is unclear why this supports Defendants' claim that the Plaintiffs, as individuals, do

3   not have constitutional standing to sue Defendants.   Even if Plaintiffs were not injured by all of the

4   various forms of predatory lending in which Defendants allegedly engaged, Plaintiffs' FAC does

5   contain allegations that Defendants' actions injured Plaintiffs.   In the FAC, Plaintiffs outline several

6   interactions between Defendants and Plaintiffs that Plaintiffs claim caused them harm.   According

7   to Plaintiffs, Defendants phoned the Pradhans, offered them a loan, convinced them to abandon an

8   alternative financing source, and sold them two different loan products that now jeopardize their

9   ability to keep their home.   The FAC also contains allegations that Defendants contacted Bali,

10   assisted her in applying for a loan, inflated her income, and failed to properly or fully inform her of

11   her predictable monthly mortgage payments.   Plaintiffs claim that as a result of Defendants'

12   conduct, Bali is in imminent danger of losing her home.

13       These claims are sufficient to allege an injury traceable to Defendants.   Defendants' focus

14   on the forms of predatory lending that did not affect Plaintiffs is misguided.   Whether Plaintiffs can

15   certify their class is not before the Court at this time.   Because Plaintiffs have alleged an injury in

16   fact that is traceable to Defendants' conduct, they have standing to pursue their claims against

17   Defendants.   Any dispute as to whether Plaintiffs have standing to pursue the claims of the putative

18   class is properly addressed at a later time, not on a motion to dismiss.

19       Defendants make one final argument in support of their Rule 12(b)(1) motion.   They claim

20   that because Bali's mortgage loan names CitiMortgage, and not Citibank, she does not have

21   standing to sue Citibank.[4]   *Id.* at 7.   Even if Bali did purchase her loan from CitiMortgage and not

---

[4] Bali's mortgage loan is not attached to Plaintiffs' FAC.   As such, Defendants have requested
judicial notice of Bali's Deed of Trust, which is notarized, and her interest-only period adjustable
rate note.   *See* Dkt. No. 28 ("RJN"), Exs. B, C.   Defendants have also requested judicial notice of
the Pradhans' HELOC Deed of Trust, which is notarized.   RJN, Ex. A.   "A court may consider
evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2)
the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the
copy attached to the 12(b)(6) motion."   *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006)
(citations omitted).   Plaintiffs' FAC refers to the adjustable rate mortgage that Defendants sold Bali,
the home that Bali refinanced with her mortgage, and the Pradhans' HELOC.   Bali's mortgage, her
Deed of Trust, and the Pradhans' HELOC are all central to Plaintiffs' claims, and no party has
questioned the authenticity of the copies of these documents attached to Defendants' motion.
Moreover, other district courts have taken judicial notice of deeds of trust.   *See e.g.*, *Western Fed.
Sav. & Loan Ass'n v. Heflin Corp.*, 797 F. Supp. 790, 792 (N.D. Cal. 1992); *see also* Fed. R. Evid.

7

United States District Court
For the Northern District of California

Citibank, this is not conclusive evidence that Bali never interacted with Citibank.  Plaintiffs' complaint contains allegations referring to both Defendants.  Taking those allegations as true, Bali has alleged enough facts to survive a motion to dismiss for lack of constitutional standing.

### B. RICO

Plaintiffs' first cause of action, as pled in their FAC, is for a violation of 18 U.S.C. §§ 1961-1968 ("RICO").  FAC ¶¶ 63-68.  Plaintiffs allege that Defendants have violated and continue to violate RICO by conducting their business through a pattern of fraudulent, predatory lending racketeering.  *Id.* ¶ 64.  Plaintiffs allege that Defendants have carried out this activity by use of the internet, telephone, and US mail.  *Id.* ¶ 65.  Based on these allegations, Plaintiffs seek declaratory relief, triplicate damages, punitive damages, pre-judgment interest, and costs of suit.  *Id.* ¶ 68.

Defendants make two arguments in support of their motion to dismiss Plaintiffs' RICO claim.  First, Defendants argue that Plaintiffs do not have statutory standing to bring a RICO claim against Defendants.  Mot. 7-8.  Second, Defendants argue that Plaintiffs have failed to allege enough facts to state a plausible claim for relief under RICO.  *Id.* at 8-11.

### 1. RICO Standing

To bring a civil RICO claim, a plaintiff must have statutory standing.[5]  "RICO standing requires compensable injury and proximate cause."  *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1055 (9th Cir. 2008).  Stated less succinctly, a "civil RICO plaintiff only has standing if . . . he has been injured in his business or property by the conduct constituting the violation."  *Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969, 975 (9th Cir. 2008) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S. Ct. 3275, 87 L. Ed. 2d 346 (1985)) (quotation marks omitted).

---

902(8) ("Documents accompanied by a certificate of acknowledgment executed in the manner provided by law by a notary public" are self-authenticating).  Therefore, pursuant to Federal Rule of Evidence 201, the Court takes judicial notice of Bali's Deed of Trust and the Pradhans' HELOC Deed of Trust.  Furthermore, under Federal Rule of Evidence 902(9), promissory notes are self-authenticating.  *See United States v. Varner*, 13 F.3d 1503, 1509 (11th Cir. 1994); *United States v. Carriger*, 592 F.2d 312, 316 (6th Cir. 1979).  Therefore, pursuant to Federal Rule of Evidence 201, this Court also takes judicial notice of Bali's adjustable rate note.

[5] "For all standing questions, the burden of proof is on the plaintiff."  *Hal Roach Studios, Inc. v. Richard Feiner and Co.*, 896 F.2d 1542, 1554 n.18 (9th Cir. 1990) (citing *Baker v. United States*, 722 F.2d 517, 518 (9th Cir. 1983)).

Case No.: 10-CV-03245-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

The compensable injury prong of the RICO standing requirement has two elements.  First, the plaintiff must experience "harm to a specific business or property interest."  *See Diaz v. Gates*, 420 F.3d 897, 900 (9th Cir. 2005) (en banc).  Personal injury does not constitute such harm.  *See Berg v. First State Ins. Co.*, 915 F.2d 460, 464 (9th Cir. 1990).  Determining whether harm to a specific business or property injury exists is "a categorical inquiry typically determined by reference to state law."  *Id.*   In other words, state law must protect the alleged business or property interest.  *See e.g.*, *Living Designs, Inc. v. E.I. Dupont de Nemours and Co.*, 431 F.3d 353, 364 (9th Cir. 2005) (finding harm to a specific property interest where the harm alleged by plaintiffs was fraudulent inducement, which is actionable under Hawaii law); *Diaz*, 420 F.3d at 900 (finding harm to a specific property interest where the harms plaintiff alleged amounted to intentional interference with contract and interference with prospective business relations, both of which are established torts under California law).  Second, the plaintiff must experience a concrete financial loss.  *See Canyon County*, 519 F.3d at 975 (9th Cir. 2008) (holding that the Ninth Circuit requires a "plaintiff asserting injury to property [to] allege 'concrete financial loss'") (citation omitted).

To determine whether the plaintiff's injury was proximately caused by a defendant's RICO violation, courts consider several factors.[6]  Issues of proximate cause are generally factual inquiries that are not appropriate for resolution on a Rule 12(b)(6) motion.  *See Newcal Indus.*, 513 F.3d at 1055; *see also Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1168-69 (9th Cir. 2001).  "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to plaintiff's injuries."  *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1149 (9th Cir. 2008) (quoting *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 126 S. Ct. 1991, 1998, 164 L. Ed. 2d 720 (2006)) (quotation marks omitted).

Here, Bali alleges that she is in imminent danger of losing her home.  She does not, however, allege any present injury to her property.  Without claiming a concrete financial loss, Bali

---

[6] These factors are: "(1) whether there are more direct victims of the alleged wrongful conduct who can be counted on to vindicate the law as private attorneys general; (2) whether it will be difficult to ascertain the amount of the plaintiff's damages attributable to defendant's wrongful conduct; and (3) whether the courts will have to adopt complicated rules apportioning damages to obviate the risk of multiple recoveries."  *Ass'n of Wash. Pub. Hosp. Dists. v. Philip Morris Inc.*, 241 F.3d 696, 701 (9th Cir. 2001) (quotation and quotation marks omitted).

9

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1   fails to establish that she possesses statutory standing to maintain a civil RICO claim.  Her RICO

2   claim is dismissed with leave to amend.

3          The Pradhans, in contrast, allege that they lost $200,000 in home equity due to Defendants'

4   fraudulent conduct.  Fraudulent and unfair business practices are actionable in California.  *See*

5   CAL. BUS. & PROF. CODE § 17200.  The loss of $200,000 in home equity constitutes a concrete

6   financial loss.  As for proximate cause, the facts pled in the FAC make it plausible that Defendants'

7   conduct led directly to the Pradhans' injury.  Therefore, Defendants' motion to dismiss the

8   Pradhans' RICO claim based on lack of statutory standing is denied.

9                    **2.  Plausibility of the Pradhans' RICO Claim**

10          Because the Pradhans have alleged enough facts to establish statutory standing, the Court

11   will consider Defendants' argument that Plaintiffs' RICO claim should be dismissed because

12   Plaintiffs do not state a plausible claim for relief under RICO.  Defendants first attack the

13   plausibility of the Pradhans' RICO claim based on Plaintiffs' failure to plead sufficient facts

14   showing that Defendants engaged in racketeering activity.  Mot. 8-10.

15          "RICO provides a private right of action for any person injured in his business or property

16   by a RICO violation."  *Sybersound Records*, 517 F.3d at 1146-47 (quoting 18 U.S.C. § 1964(c))

17   (quotation marks and alterations omitted).  RICO violations come in several forms.  Although

18   Plaintiffs do not specify under which type of RICO violation they seek relief, their allegations

19   appear to fit best under 18 U.S.C. § 1962(c).[7]  "A violation under section 1962(c) requires proof of:

20   '1) conduct 2) of an enterprise 3) through a pattern 4) of racketeering activity.'"  *Howard v.*

21   *America Online Inc.*, 208 F.3d 741, 746 (9th Cir. 2000) (quoting *Sedima*, 473 U.S. at 496, 105 S.

22   Ct. 3275).

23          Racketeering activity is defined by 18 U.S.C. § 1961(1).  Section 1961(1) is essentially an

24   exclusive list of acts that constitute racketeering activity.  Once again, Plaintiffs do not specify in

25   which of the enumerated racketeering activities Defendants engaged.  Based on Plaintiffs'

26

27   [7] Section 1962(c) states: "It shall be unlawful for any person employed by or associated with any
     enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct
28   or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of
     racketeering activity or collection of unlawful debt."

Case No.: 10-CV-03245-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

1  allegation that Defendants conducted "its fraudulent business practices by internet, telephone, and

2  cable wire, and by United States Post or other mail carrier," FAC ¶ 65, the Court presumes

3  Plaintiffs are alleging that mail and wire fraud constitute Defendants' racketeering activity.[8]

4      As with other causes of action involving fraud, the Ninth Circuit applies Rule 9(b) pleading

5  standards to RICO claims.  *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 541 (9th Cir.

6  1989) (citation omitted).  "Rule 9(b) requires that the pleader state the time, place, and specific

7  content of the false representations as well as the identities of the parties to the misrepresentation."

8  *Id.*  As such, "[a]llegations of fraud under [RICO] must identify the time, place, and manner of

9  each fraud plus the role of each defendant in each scheme."  *Id.* (quoting *Schreiber Distributing*

10  *Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986)) (internal quotation

11  marks omitted).

12     Plaintiffs' complaint fails to meet Rule 9(b) pleading standards.  Plaintiffs allege neither the

13  specific content of any false representations nor the time, place, or parties involved.  Because

14  Plaintiffs only make general allegations that Defendants engaged in fraudulent conduct, the

15  Pradhans' RICO claims are dismissed with leave to amend.[9]

16     **C. TILA**

17     Plaintiffs bring their second cause of action against Defendants under 15 U.S.C. § 1601 *et*

18  *seq.* ("TILA").  FAC ¶¶ 69-78.  Plaintiffs allege that Defendants failed to clearly and conspicuously

19  disclose the rates and terms of loans to consumers as required by 12 C.F.R. § 226.17(a)(1).  *Id.* ¶¶

20  70-71.  Based on these allegations, Plaintiffs seek the right to rescind the underlying loans, general

21  damages, punitive damages, pre-judgment interest, and the costs of suit.  *Id.* ¶ 78.

22     Defendants argue that Plaintiffs' TILA claim should be dismissed for two reasons.  First,

23  Defendants argue that Plaintiffs' TILA damages claim is time barred by the relevant statute of

24

25  ---

[8] Mail and wire fraud are among the acts which constitute racketeering activity under § 1961(1).
*See Beck v. Prupis*, 529 U.S. 494, 497 n.2, 120 S. Ct. 1608, 146 L. Ed. 2d 561 (2000).

26  [9] Because Bali's RICO claim did not survive Defendants' statutory standing argument and the

27  Pradhans' RICO claim did not survive Defendants' racketeering activity argument, the Court will
not address Defendants' other arguments for dismissing Plaintiffs' RICO claims.  Nevertheless, if

28  Plaintiffs reallege RICO claims, it would behoove Plaintiffs to address all the deficiencies alleged
by Defendants.

11

**United States District Court**
For the Northern District of California

limitations.  Mot. 12.  Second, Defendants argue that Plaintiffs have failed to state a legally cognizable TILA rescission claim.  *Id.*

### 1. TILA Damages Claim

The statute of limitations for a TILA damages claim is one year from the date of the occurrence of the violation.  *See* 15 U.S.C.A. § 1640(e).  The Ninth Circuit has held that this limitations period begins at the date of consummation of the transaction.  *See King v. Caifornia*, 784 F.2d 910, 915 (9th Cir. 1986).  According to Plaintiffs' FAC, the Pradhans entered into their loans with Defendants in 2008.  *See* FAC, Ex. 4 (TILA disclosure statement lists the date of the loan as March 21, 2008).  Bali closed on her loan in January of 2008.  *See* RJN, Ex. B.  Plaintiffs filed their initial complaint on July 23, 2010.  *See* Dkt. No. 1.  Thus, all named Plaintiffs consummated their transactions with Defendants over a year before they filed their initial complaint.

Nevertheless, the Ninth Circuit has held that equitable tolling may apply to TILA damages claims.  *See King*, 784 F.2d at 914-15.  Moreover, because a determination on equitable tolling often depends on matters outside the pleadings, "it is not generally amenable to resolution on a Rule 12(b)(6) motion."  *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995) (internal quotations and citation omitted).  As long as the complaint, liberally construed, "adequately alleges facts showing the potential applicability of the equitable tolling doctrine," a motion to dismiss should not be granted.  *Cervantes v. City of San Diego*, 5 F.3d 1273, 1277 (9th Cir. 1993).

Given the Ninth Circuit's position on equitable tolling, it is possible that Plaintiffs' claim for TILA damages is not time barred.  In this instance, however, Plaintiffs made no allegations of equitable tolling in their complaint and have failed to file any opposition to Defendants' motion to dismiss.  Nonetheless, because the Ninth Circuit disfavors disposing of equitable tolling issues on motions to dismiss, the Court gives Plaintiffs an opportunity to make factual allegations sufficient to allege equitable tolling.  Failing to do so, however, will result in dismissal of Plaintiffs' claim with prejudice.

Accordingly, Plaintiffs' TILA damages claim is dismissed with leave to amend.

### 2.  TILA Rescission Claim

"TILA was enacted in 1968 'to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit.'"[10]  *Yamamoto v. Bank of New York*, 329 F.3d 1167, 1170 (9th Cir. 2003) (quoting 15 U.S.C. § 1601(a)).  Ordinarily, individuals who borrow money to purchase their principal dwelling may rescind the transaction "until midnight of the third business day following the consummation of the transaction."  *See* 15 U.S.C. 1635(a).  This deadline is extended to three years, however, if required "material disclosures" are not made.  *See* 12 C.F.R. § 226.23(a)(3).  "The term 'material disclosures' means the required disclosures of the annual percentage rate, the finance charge, the amount financed, the total of payments, the payment schedule, and the disclosures and limitations referred to in §§ 226.32(c) and (d) and 226.35(b)(2)."  12 C.F.R. § 226.23(a)(3) n.48.  "Technical or minor violations of TILA or Reg[ulation] Z, as well as major violations, impose liability on the creditor and entitle the borrower to rescind."  *Semar v. Platte Valley Fed. Sav. & Loan Ass'n*, 791 F.2d 699, 704 (9th Cir. 1986).

Defendants argue that Plaintiffs have failed to state a TILA rescission claim for three reasons. Mot. 12-14.  First, Defendants argue that Plaintiffs have not alleged any "material" terms that Defendants failed to disclose.  Second, Defendants argue that Plaintiffs did not send the required notice to either Defendant.  Third, Defendants argue that Plaintiffs have failed to allege that they have the ability to tender the principal balance of their loans.  Because the second is dispositive, the Court will not consider the other two arguments.

Consumers cannot exercise the right to rescind until providing notice to the creditor.  *See* 12 C.F.R. § 226.15(a)(2) ("To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram, or other means of written communication. Notice is considered given when mailed, or when filed for telegraphic transmission, or, if sent by other means, when delivered to the creditor's designated place of business.").  Here, Plaintiffs have not alleged that

---

[10] TILA's implementing regulations are contained in Title 12 of the Code of Federal Regulations ("Regulation Z").

Case No.: 10-CV-03245-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

1    they notified Defendants as required by Regulation Z.   Therefore, Plaintiffs' TILA rescission

2    claims are dismissed with leave to amend.

3        **D.  Cal. Bus. & Prof. Code § 17500**

4        Plaintiffs bring their third cause of action against Defendants under California Business and

5    Professions Code § 17500.  FAC ¶¶ 79-82.  Plaintiffs allege that Defendants violated that statute by

6    making or disseminating untrue or misleading statements in order to induce consumers to enter into

7    mortgage loans or HELOCs.  *Id.* ¶ 80.  Furthermore, Plaintiffs claim that Defendants knew that

8    these statements were untrue at the time they made these statements.  *Id.* ¶ 81.  Based on these

9    allegations, Plaintiffs seek declaratory relief, general damages, punitive damages, pre-judgment

10   interest, and costs of suit.  *Id.* ¶ 82.

11       Section 17500 prohibits persons and businesses from making statements to consumers that

12   are "untrue or misleading, and which [are] known, or which by the exercise of reasonable care

13   should be known, to be untrue or misleading."   To state a cause of action under § 17500, "the

14   plaintiff must demonstrate that members of the public are likely to be deceived."  *Rosal v. First*

15   *Fed. Bank of Cal.*, 671 F. Supp. 2d 1111, 1134 (N.D. Cal. 2009) (quoting *Wayne v. Staples, Inc.*,

16   135 Cal. App. 4th 466, 484, 37 Cal. Rptr. 3d 544 (2006)) (quotation marks omitted).

17       Defendants argue that Plaintiffs' § 17500 claim should be dismissed for two reasons.  First,

18   Defendants argue that the claim is preempted by the National Bank Act ("NBA").  Mot. 14 n.14.

19   Second, Defendants argue that Plaintiffs have failed to state their claim with particularity as

20   required by Federal Rule of Civil Procedure 9(b).  *Id.* at 14.  Because the Court finds that Plaintiffs'

21   § 17500 claim is preempted by the NBA, the Court will not address Defendants' second argument.

22       The NBA "vests national banks[11] . . . with authority to exercise 'all such incidental powers

23   as shall be necessary to carry on the business of banking.'"  *Martinez v. Wells Fargo Home Mortg.,*

---

[11] As evidence that Citibank qualifies as a national bank, Defendants submited a Federal Deposit Insurance Corporation on-line confirmation and report selection for Citibank, N.A.  RJN, Ex. D. Under Federal Rule of Evidence 902(5), publications issued by a public authority are self-authenticating.  Plaintiffs have not disputed the accuracy of Defendants' submission.  Courts do take judicial notice of information found on government agency websites.  *See Paralyzed Veterans of Am. v. McPherson*, 2008 WL 4183981 *5-6 (N.D. Cal. Sept. 9, 2008) (citing appellate and district court decisions taking judicial notice of information found on government agency websites).  Therefore, the Court grants, pursuant to Federal Rule of Evidence 201, Defendants' request for judicial notice of Citibank's FDIC on-line confirmation and report selection.

14

Case No.: 10-CV-03245-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

United States District Court
For the Northern District of California

*Inc.*, 598 F.3d 549, 554-55 (9th Cir. 2010) (quoting 12 U.S.C. § 24 (Seventh)).   "Real estate

lending is expressly designated as part of the business of banking."   *Id.* at 555 (citing 12 U.S.C. §

371(a)).   The Office of the Comptroller of the Currency ("OCC") possesses primary responsibility

for the surveillance of the "business of banking" authorized by the NBA.   *Id.* (citing *NationsBank*

*of N.C., N.A. v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 256, 115 S. Ct. 810, 130 L. Ed. 2d

740 (1995)).   "To carry out this responsibility, the OCC has the power to promulgate regulations

and to use its rulemaking authority to define the 'incidental powers' of national banks beyond those

specifically enumerated in the statute."   *Id.* (citing 12 U.S.C. § 93a).   "OCC regulations possess the

same preemptive effect as the [NBA] itself."   *Id.* (citing *Fid. Fed. Sav. & Loan Ass'n v. de la*

*Cuesta*, 458 U.S. 141, 153, 102 S. Ct. 3014, 73 L. Ed. 2d 664 (1982)).

The NBA "does not 'preempt the field' of banking."   *Id.*   "Federally chartered banks are

subject to state laws of general application in their daily business to the extent such laws do not

conflict with the letter or the general purposes of the NBA."   *Rose v. Chase Bank USA, N.A.*,

513 F.3d 1032, 1037 (9th Cir. 2008) (quoting *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 127 S.

Ct. 1559, 1567, 167 L. Ed. 2d 389 (2007)) (quotations marks omitted).   Nevertheless, "state laws

that 'obstruct, impair, or condition a national bank's ability to fully exercise its Federally authorized

real estate lending powers' are preempted."   *Martinez*, 598 F.3d at 555 (citations omitted).

In *Martinez*, the Ninth Circuit held that the plaintiff's fraudulent conduct claim, based on a

California statute similar to § 17500, against Wells Fargo for the bank's failure to disclose certain

costs related to the bank's services was preempted by OCC regulation.   598 F.3d at 556-57.   That

regulation, 12 C.F.R. § 34.4(a)(9), states that "a national bank may make real estate loans . . .

without regard to state law limitations concerning[ d]isclosure and advertising, including laws

requiring specific statements, information, or other content to be included in credit application

forms, credit solicitations, billing statements, credit contracts, or other credit-related documents."

Plaintiffs allege that Defendants violated § 17500 by making untrue and misleading

statements related both to Defendants' ability to guide consumers through the home mortgage

process and to the terms of those mortgages.   Because Plaintiffs' claim seeks to regulate disclosures

and advertising related to real estate loans, Plaintiffs' § 17500 is preempted by the NBA.   *Cf. Silvas*

15

1   *v. E\*Trade Mortg. Corp.*, 514 F.3d 1001, 1004-06 (9th Cir. 2008) (holding that provisions of a

2   statute similar to the NBA—the Home Owners' Loan Act of 1933—regulating disclosure and

3   advertising in credit transactions preempted the plaintiff's § 17500 claim, which was based on

4   allegedly false advertisements on the defendant's website and in defendant's advertising materials).

5   This is the case even though § 17500 does not impose specific disclosure requirements.  *See In re*

6   *Countrywide Fin. Corp. Mortg. Mktg. and Sales Practices Litig.*, 601 F. Supp. 2d 1201, 1222-23

7   (S.D. Cal. 2009) (holding that 12 C.F.R. § 34.4(a)(9) is not solely limited to state laws imposing

8   specific disclosures but also preempts state laws that impose general requirements on disclosures

9   and advertising related to credit transactions).

10          Because Plaintiffs' § 17500 claim is preempted, it is dismissed with prejudice.

11          **E.  Cal. Bus. & Prof. Code § 17200**

12          Plaintiffs' fourth cause of action arises under California's Unfair Competition Law ("UCL"),

13   California Business & Professions Code § 17200.  FAC ¶¶ 83-85.  Plaintiffs allege that Defendants

14   have engaged in several practices that constitute unfair competition, including creating and

15   maintaining a deceptive scheme to mass produce loans for sale on the secondary market.  *Id.* ¶84.

16   Based on these allegations, Plaintiffs seek declaratory relief, general damages, punitive damages,

17   pre-judgment interest, and costs of suit.  *Id.* ¶ 85.

18          Defendants argue that Plaintiffs' UCL claims should be dismissed because Plaintiffs' FAC

19   fails to state such a claim.  Mot. 15.  California's UCL prohibits "any unlawful, unfair or

20   fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  CAL.

21   BUS. & PROF. CODE § 17200.  Plaintiffs who seek to recover under the UCL must meet the

22   heightened pleading requirements of Rule 9(b).  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120,

23   1125 (9th Cir. 2009) (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102-05 (9th Cir.

24   2003)).  Under Rule 9(b), "[a]verments of fraud must be accompanied by 'the who, what, when,

25   where, and how' of the misconduct charged."  *Vess*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting

26   *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir.1997)).  In addition, "Rule 9(b) demands that the

27   circumstances constituting the alleged fraud be specific enough to give defendants notice of the

28   particular misconduct so that they can defend against the charge and not just deny that they have

Case No.: 10-CV-03245-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

**United States District Court**
For the Northern District of California

1   done anything wrong." *Kearns*, 567 F.3d at 1124 (quoting *Bly-Magee v. California*, 236 F.3d

2   1014, 1019 (9th Cir. 2001)) (internal quotation marks and alterations omitted).

3       In cases involving multiple defendants, "Rule 9(b) does not allow a complaint to merely

4   lump multiple defendants together but 'requires plaintiffs to differentiate their allegations when

5   suing more than one defendant and [to] inform each defendant separately of the allegations

6   surrounding his alleged participation in the fraud.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65

7   (9th Cir. 2007) (citation and alterations omitted).  In other words, "a plaintiff must, at a minimum,

8   identify the role of each defendant in the alleged fraudulent scheme."  *Id.* at 765 (quoting *Moore*,

9   885 F.2d at 541) (quotation marks and alterations omitted).

10      Like their RICO allegations, Plaintiffs' allegations as to its UCL claim do not satisfy Rule

11  9(b) requirements.  Plaintiffs only make general allegations as to false and misleading statements

12  made by Defendants.  They do not identify with any specificity who made these statements or

13  when they were made.  Moreover, Plaintiffs do not differentiate between Defendants and do not

14  identify the role of each Defendant in Defendants' alleged fraudulent loan scheme.

15      Therefore, Plaintiffs' § 17200 claim is dismissed with leave to amend.

16  **F.  Implied Covenant of Good Faith and Fair Dealing**

17      Plaintiffs' fifth and final cause of action is for breach of the implied covenant of good faith

18  and fair dealing.  FAC ¶¶ 86-97.  Plaintiffs allege that Defendants breached the implied covenant of

19  good faith and fair dealing by misrepresenting to Plaintiffs the terms of their loans.  *Id.* ¶ 87.

20  Plaintiffs further allege that Defendants unreasonably denied them the continued enjoyment of their

21  homes by selling them loan products that were entirely outside of their means.  *Id.* ¶ 89.  Based on

22  these allegations, Plaintiffs seek declaratory relief, damages, punitive damages, pre-judgment

23  interest, and costs of suit.  *Id.* ¶ 97.   Defendants argue that Plaintiffs have failed to state a claim

24  for breach of the implied covenant of good faith and fair dealing.  Mot. 17.

25      "Generally, every contract . . . imposes upon each party a duty of good faith and fair dealing

26  in its performance and its enforcement." *McClain v. Octagon Plaza, LLC*, 159 Cal. App. 4th 784,

27  798, 71 Cal. Rptr. 3d 885, 896 (2008) (quoting *Carma Developers (Cal.), Inc. v. Marathon Dev.*

28  *Cal., Inc.*, 2 Cal. 4th 342, 371-72, 6 Cal. Rptr. 2d 467, 826 P.2d 710 (1992)) (quotation marks

**United States District Court**
For the Northern District of California

17

Case 5:10-cv-03245-LHK   Document 39   Filed 01/10/11   Page 18 of 21

**United States District Court**
For the Northern District of California

omitted).  "In sum, the covenant is implied as a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct that frustrates the other party's rights to the benefits of the agreement." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 36, 44 Cal. Rptr. 2d 370, 390, 900 P.2d 619, 639 (1995) (citation omitted).  The implied covenant, however, "is a supplement to an existing contract, and thus it does not require parties to negotiate in good faith prior to any agreement." *McClain*, 159 Cal. App. 4th at 799, 71 Cal. Rptr. 3d at 897 (citation omitted).  Furthermore, the implied covenant "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Agosta v. Astor*, 120 Cal. App. 4th 596, 607, 15 Cal. Rptr. 3d 565, 573 (2004) (quotation and quotation marks omitted).

As an initial matter, Defendants point out that Bali does not have a contract with Citibank. Mot. 17 n.17.  "The implied covenant of good faith and fair dealing rests upon the existence of some specific contractual obligation." *Racine & Laramie, Ltd. v. Dep't of Parks & Recreation*, 11 Cal. App. 4th 1026, 1031, 14 Cal. Rptr. 2d 335 (1992) (citation omitted).  Because Bali does not have a contract with Citibank, her implied covenant of good faith and fair dealing claim has no specific contractual obligation upon which to rest.  Therefore, Bali cannot sustain a cause of action against Citibank for breach of the implied covenant of good faith and fair dealing, and thus her claim against Citibank is dismissed with prejudice.

Bali's claim against CitiMortgage and the Pradhans' claim against both Defendants also fail.  None of Plaintiffs' allegations refer to Defendants' post-agreement actions.  Instead, Plaintiffs allege that Defendants deprived them of the benefit of their loans—namely the continued enjoyment of their homes—by inducing them to purchase loans beyond their means.  In other words, Plaintiffs' claim is more akin to a claim of fraudulent inducement, not breach of the implied covenant of good faith and fair dealing.  The implied covenant of good faith and fair dealing places "a duty of good faith and fair dealing" on the parties' "performance" and "enforcement" of the contract.  *See McClain*, 159 Cal. App. 4th at 798, 71 Cal. Rptr. 3d 885 (quotation and quotation marks omitted).  "[I]t does not require parties to negotiate in good faith prior to any agreement." *Id.* at 799, 71 Cal. Rptr. 3d at 897 (citation omitted).  Here Plaintiffs have not alleged that Defendants

18

Case No.: 10-CV-03245-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

1    engaged in any bad faith efforts in the performance or enforcement of their loans.   Instead,

2    Plaintiffs' allegations revolve around Defendants' fraudulently inducing Plaintiffs to assume loans

3    Plaintiffs could not afford.   Such allegations are insufficient to state a breach of the implied

4    covenant of good faith and fair dealing claim.   *See Amparan v. Plaza Home Mortg., Inc.*, 678 F.

5    Supp. 2d 961, 978 (N.D. Cal. 2008) (holding that where a mortgagee's claim is based on a

6    creditor's "marketing, promotion, or distribution of her loan before consummation, the implied

7    covenant of good faith and fair dealing is inapplicable") (quotation omitted).

8            Therefore, Bali's claim against CitiMortgage and the Pradhans' claims against CitiMortgage

9    and Citibank are dismissed with leave to amend.

10           **G.  Rule 41**

11           In a supplemental filing after Plaintiffs' deadline for opposing their motion had passed,

12   Defendants request that this Court dismiss Plaintiffs' complaint with prejudice pursuant to Federal

13   Rule of Civil Procedure 41(b).   *See* Dkt. No. 33.  Defendants argue that because Plaintiffs failed to

14   comply with Civil Local Rule 7-3, which requires Plaintiffs to file an opposition or statement of

15   non-opposition to any motion not less than 21 days before the hearing date, this Court should

16   dismiss Plaintiffs' complaint.

17           Under Rule 41(b), "[i]f the plaintiff fails to prosecute or to comply with [the Federal Rules

18   of Civil Procedure] or a court order, a defendant may move to dismiss the action or any claim

19   against it."   This right of dismissal is in the discretion of the district court.   *See Henderson v.*

20   *Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986) (citation omitted).   Before dismissing a plaintiff's

21   case, courts must "weigh several factors: (1) the public's interest in expeditious resolution of

22   litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4)

23   the public policy favoring disposition of cases o[n] their merits; and (5) the availability of less

24   drastic sanctions."   *Ghazali v. Moran*, 46 F.3d 52, 53 (9th Cir. 1995) (quotation and quotation

25   marks omitted).     "Dismissal is a harsh penalty and is to be imposed only in extreme

26   circumstances."   *Henderson*, 779 F.2d at 1423 (citing *Raiford v. Pounds*, 640 F.2d 944, 945 (9th

27   Cir. 1981)).

28

19

Plaintiffs' failure to file an opposition does hinder the expeditious resolution of this litigation and the Court's ability to manage its docket.  Nevertheless, the Court prefers less drastic sanctions than dismissal with prejudice for failure to comply with the local rules.  Although the complaint currently under review is the second filed by Plaintiffs, it is the first complaint to face a motion to dismiss.  Considering the public policy favoring disposition of this case on its merits, the Court, where noted in this Order, is granting Plaintiffs an opportunity to amend some of their claims and dismissing some claims with prejudice.

The Court, however, understands Defendants' interest in quickly resolving a case that Plaintiffs may have abandoned.  As such, Plaintiffs shall have 20 days from the date of this Order to file an amended complaint consistent with this Order.  Failure to comply with this deadline will result in dismissal of Plaintiffs' case with prejudice.

**H.  Request for Attorneys' Fees**

In the conclusion of their motion, Defendants request attorneys' fees.  Mot. 18.  Defendants, however, provide no justification for their request.[12]  As such, their request is denied.

### IV.  CONCLUSION

For the foregoing reasons, this Court DENIES Defendants' motion to dismiss Plaintiffs' complaint under Rule 12(b)(1) and GRANTS Defendants' motion to dismiss under Rule 12(b)(6) as follows:

(1)  Plaintiffs' RICO claims are DISMISSED with leave to amend;

(2)  Plaintiffs' TILA claims are DISMISSED with leave to amend;

(3)  Plaintiffs' § 17500 claims are DISMISSED with prejudice;

(4)  Plaintiffs' § 17200 claims are DISMISSED with leave to amend;

(5)  Bali's claim against Citibank for breach of the implied covenant of good faith and fair dealing is DISMISSED with prejudice.  Bali's claim against CitiMortgage and the Pradhans' claims against both Defendants are DISMISSED with leave to amend.

---

[12] Moreover, Defendants' request fails to comply with Civil Local Rule 54-5, which requires motions for awards of attorney's fees to be served and filed within 14 days of entry of judgment by the Court.

20

Case No.: 10-CV-03245-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

United States District Court
For the Northern District of California

1          Plaintiffs shall have 20 days from the date of this Order to file an amended complaint

2    consistent with this Order.  Failure to comply with this filing deadline will result in a dismissal of

3    Plaintiffs' case with prejudice.

4    **IT IS SO ORDERED.**

5

6    Dated: January 10, 2011             _Lucy H. Koh_

                                                      _____

7                                                         LUCY H. KOH

                                                     United States District Judge

**United States District Court**
For the Northern District of California

Case No.: 10-CV-03245-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS